```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ALABAMA
                          EASTERN DIVISION

BRIANA DOBSON,                    )
                                  )
    Plaintiff,                    )
                                  )
vs.                               )    CV 00-BU-1742-E
                                  )
EASTERN ALABAMA RAILWAY;          )
STATES RAIL,                      )
                                  )
    Defendants.                   )
```

### MEMORANDUM OPINION

Defendants Eastern Alabama Railway [EARY] and States Rail filed a motion for summary judgment (Doc. 33), asking the Court to dismiss Plaintiff's claims. Plaintiff's complaint alleges that Defendants discriminated against her on the basis of her sex with regard to discipline and pay. The Court has reviewed the parties' submissions and finds that there are no disputed issues of material fact and that Defendants' are entitled to judgment as a matter of law.

**I.    SUMMARY JUDGMENT STANDARD**

On a motion for summary judgment, the Court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Summary judgment is weighed heavily in

favor of the non-movant; it is appropriate only if the Court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553; *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, the Court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II.   **STATEMENT OF FACTS**

In November, 1990, Plaintiff Briana Dobson began working for Defendant EARY in Sylacauga, Alabama, in the Clerk position, which is an hourly position. Defendant States Rail apparently is the parent company of EARY. During 1993 and

1994, Plaintiff filled in as a brakeman on the train crew, in addition to her office duties as clerk.

EARY hired Larry Nordquist as General Manager in April 1994.  Nordquist, as General Manager, had supervisory authority over all of the employees of EARY.  Plaintiff contends that, when Nordquist was hired as General Manager, he refused to allow Plaintiff to continue working with the train crew and stated to other male employees that the train crew was no place for a woman.  Nordquist denies that he made this statement.

Plaintiff was promoted to the position of Agent, which is a salary position, in January 1996.  The Agent position was a supervisory position over the train crew, but the Agent could not hire employees.  Company payroll records reflect that in 1997, hourly employees were paid a bonus of $600.00.  David Garrett and Bobby Gilmer, who were salaried employees like Dobson were paid $2000.00 each while Dobson was paid a bonus of $600.00, like hourly employees.  Defendants contend that the difference in bonuses was based on seniority and that Plaintiff was paid the same bonus as other employees with her same years of service.

In April or May 1999, Dan Lovelady, Regional Manager at States Rail and General Manager at Alabama and Gulf Coast Railway (a sister company of EARY), sent Jay Welch, Chief Mechanical Officer at Alabama and Gulf Coast Railway, to EARY on a fact-finding mission to determine what problems existed at EARY that would cause a long-time employee, Bobby Gilmer, to resign.  Welch appeared in

Plaintiff's office with Gilmer and asked for information. Gilmer told Plaintiff that Welch could be trusted. Plaintiff told Welch about low morale and about her suspicions that Nordquist was taking kickbacks from vendors. Beginning when Nordquist started working for EARY, employees had discussed with Plaintiff their suspicions that Nordquist was taking kickbacks.

Plaintiff contends that following her conversation with Welch, she did not discuss her suspicions with anyone outside of EARY. However, there is evidence that Lovelady had received information that Plaintiff had told, among others, a former employee, Fred Krebs, about her suspicions about Nordquist taking kickbacks and that she had told him that she had proof. Thereafter, Lovelady contacted Plaintiff and requested a meeting with her to discuss her suspicions. Plaintiff asked that David Garrett, an EARY employee, and Gilmer, be present at the meeting; however, they were not allowed to attend.

During this meeting, Lovelady gave Plaintiff an opportunity to resign in order to forgo an investigation. He told her that if she was not able to prove her allegations against Nordquist she would be terminated. He also told her that if the allegations were true, Nordquist would be terminated. At this meeting, Plaintiff gave Lovelady documents she alleged were proof of her allegations. Lovelady asked Plaintiff how she had obtained documents that were her proof and she told him that all the documents had been given to her by other employees, except one document that she had copied after it came across the fax machine.

At this time, Lovelady did not mention to Plaintiff that she may have violated the company's communication policy or acquired documents in an unauthorized manner. Also, Lovelady suspended Plaintiff, with pay, pending his investigation.

During his investigation, Lovelady spoke with David Garrett, an EARY employee whom Plaintiff had told Lovelady had the same proof and the same suspicions. Garrett admitted that he had discussed his suspicions regarding Nordquist and kickbacks; but, during his meeting with Lovelady, Garrett denied having any proof of his suspicions regarding Nordquist. He also denied giving Plaintiff any documents. Plaintiff did not have access to the documents she gave Lovelady as her proof.

On June 4, 1999, Lovelady and Plaintiff met for a second time. She continued to assert her suspicions. Lovelady asked her where she had gotten the documents that were her proof, she refused to tell him who had given them to her and she refused to tell him the names of any other employees with information regarding her allegations. She told Lovelady that she was not willing to risk anybody else's job. When asked if she had told Krebs about her suspicions, she said she could not remember. She admitted she told her mother and her husband. Lovelady asked her about the communication policy in the employee manual; she responded that she believed she had handled the matter in the proper manner. He also asked her if she felt "it was o.k. to take those copies and make copies of them and take them home." Doc. 39, Exh. 10, p.379. To which, Plaintiff responded:

"Who said I made copies of them? Who said I took them out of the office? . . . I made your copies, but I already had the copies that someone had provided me with." *Id.*

Approximately one week later, Dobson was suspended for 30 work days without pay. Lovelady testified that he had found Plaintiff's allegations unsubstantiated and suspended her because (1) she failed to follow the communication policy in the employee manual by spreading accusations "without filing a complaint or bring[ing] the matter to a supervisor;" and (2) she secured company documents in an unauthorized manner. Lovelady sent Plaintiff the following letter:

> My recent interviews and research have produced no credible evidence to substantiate your accusations that Eastern Railway Manager Larry Nordquist was taking or stealing money from the Company. The information you provided me proved to be nothing more than groundless suspicions.
>
> Because you chose to spread these accusations without filing a complaint or bringing the matter to a supervisor, you failed to follow the communication policy in your employee manual. In addition, you secured company records in a non-authorized manner.
>
> Your handling of this unsubstantiated matter may have a great deal of damage to the [credibility] of the manager of the company and most importantly, Larry Nordquist personally.
>
> Your actions here were unacceptable and therefore I am suspending you immediately without pay for 30 working days to conclude on 7/25/99,

Doc. 35, Exh. 4.

On June 30, 1999, Lovelady notified Dobson via letter that effective July 2, 1999, the position of agent at EARY would be abolished and that the duties and work would be transferred to Monroeville, Alabama. The letter stated:

> Effective at the end of shift on 7/02/99, the position of Agent at Eastern Alabama Railway is being abolished.
>
> Due to requests for expanded service and in an effort to merge activities and redundant tasks the job is being consolidated with similar duties at the Alabama 7 Gulf Coast Railway and the work will be transferred to Monroeville, Alabama. The General Manager will handle any Agency duties remaining at the EARY.
>
> You will be paid all vacation and/or personal leave days due.
>
> You may contact me to discuss settlement of all amounts owed you pursuant to your employment.

Doc. 35, Exh. 6.

Some of the duties of the agent position are still being performed at the EARY location in Sylacauga. When Nordquist is out of town, Foy Jenkins of the Alabama and Gulf Coast Railroad comes up to Sylacauga and performs the agent duties.[1]

Dobson was the only full-time employee at EARY that was involuntarily displaced because the position she occupied was allegedly abolished. Although discussion had been held since Spring 1999 regarding eliminating positions, none of the memos memorializing these discussions between Lovelady and Nordquist made any reference to the elimination of the Agent position. Specifically, a memo

---

[1] Plaintiff's Exhibit 1, Dobson depo. pp. 90-93, Plaintiff Exhibit 2, Nordquist depo. pp. 46-47 and Plaintiff's Exhibit 5, Garrett depo. p. 32.

dated April 20, 1999, indicated continued plans for the Agent position. Although notes indicate possible plans to eliminate several other positions, budget notes between Lovelady, Nordquist, and Rick Cecil, CEO of States Rail, never indicated that the Agent position was considered for elimination.

In 1998, David Garrett, brought suspicions of another employee stealing company property to Nordquist. Another male employee, Marvelle Whiteside, had indicated to Garrett that he suspected Rodney Gross of stealing company property. Nordquist did not tell Garrett or Whiteside that he was responsible for proving their allegations. Nordquist did not tell Garrett or Whiteside that either would be terminated if they failed to prove their allegations. Neither employee was suspended or terminated.

Lovelady had conducted investigations in the past when an employee was suspected of theft or other unlawful conduct. During his deposition, Lovelady could recall some information about two such investigations. In one, a male supervisor came to him with suspicions that another male employee had taken some items from a hotel. In that case, Lovelady did not indicate that the male supervisor bore some responsibility in proving his allegations. There is no evidence that this employee was suspended or terminated.

### III. DISCUSSION

Plaintiff's complaint alleges the following acts of discrimination:

1. Plaintiff was subjected to discipline (30-day suspension) for the same acts as other male employees who received no discipline.

2. Plaintiff was terminated for participating in Defendant's investigation in which male employees participated and were not terminated.

3. Plaintiff was paid a smaller bonus than similarly situated male employees.

### A. DISCIPLINE

Plaintiff contends in her brief that she was suspended and terminated for a work-rule violation. She contends that she was treated more harshly than similarly-situated male employees for reporting her suspicions regarding Nordquist. For purposes of summary judgment, the Court assumes, without deciding, that Defendants eliminated Plaintiff's position based on her alleged violation of the work rules, as Plaintiff alleges. Also, the Court asumes, without deciding, that Plaintiff can establish a prima facie case of discrimination with regard to her claims of disparate discipline. However, the Court finds that Plaintiff cannot establish that Defendant's articulated reason for imposing discipline on Plaintiff -- that Plaintiff violated Defendants' communication rule and that she obtained documents in an unauthorized manner -- is a pretext for unlawful gender discrimination.

When Defendant justifies Plaintiff's termination by relying on a work rule violation, Plaintiff may prove pretext by showing "(1) that she did not violate the cited

work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1363 (11th Cir. 1999), *cert. denied*, 529 U.S. 1109, 120 S. Ct. 1962, 146 L. Ed. 2d 793 (2000).

Plaintiff never clearly argues that she did not violate the work rules at issue in this case, or that Lovelady had reason to believe that she did not commit the work rule violations. *See Sweeney v. Alabama Alcoholic Beverage Control Bd.*, 117 F. Supp. 2d 1266, 1272-73 (M.D. Ala. 2000). Therefore, Plaintiff has not established pretext by showing that she did not violate the work rule.

Also, Plaintiff has not shown that she was disciplined more harshly than similarly-situated male employees. "[T]he law does not require that a 'similarly situated' individual be one who has 'engaged in the same or nearly identical conduct' as the disciplined plaintiff. Instead, the law only requires "similar" misconduct from the similarly situated comparator." *Alexander v. Fulton County*, 207 F.3d 1303, 1334 (11th Cir. 2000). "The most important factors in the analysis are the nature of the offenses committed and the punishments imposed." *Latham v. Department of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999). None of the comparators offered by Plaintiff were accused of or involved the same or similar conduct – not one of the comparators was accused of or involved in obtaining documents in an unauthorized manner and nothing in the evidence suggests that any of the comparators communicated with persons outside the

company. Therefore, Plaintiff has not established pretext by showing that she was treated more harshly than similarly situated male employees that engaged in similar misconduct.

The Court finds that Plaintiff has failed to show a disputed issue of material fact with regard to whether Defendants' articulated reason was a pretext for gender discrimination. Defendants have shown that they are entitled to judgment as a matter of law.

As to Plaintiff's claims of disparate discipline, Defendants' motion for summary judgment is due to be granted. Plaintiff's claims of disparate discipline are due to be dismissed.

### B.  BONUS

Plaintiff contends that she was not paid the same bonus as similarly situated male employees. The only bonus Plaintiff identifies was paid in 1997. She states in her brief:

> Company payroll records reflect that in 1997, hourly employees were paid a bonus of $600.00. David Garrett and Bobby Gilmer, who were salaried employees like Dobson were paid $2000.00 each while Dobson was paid a bonus of $600.00, like hourly employees.

Plaintiff's Brief, p. 22.

The Court finds Plaintiff's claim of discrimination with regard to the payment of a bonus in 1997 is time-barred. Plaintiff filed her EEOC charge on or about

September 17, 1999, more than 180 days after she received the allegedly discriminatory bonus. Therefore, Defendant's motion for summary judgment as to Plaintiff's discrimination claim based on her 1997 bonus is granted; Plaintiff's claim that she was discriminated against on the basis of her gender with regard to her bonus is dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that Defendants' Motion for Summary Judgment (Doc. 33), as to all of Plaintiff's claims, is due to be granted. The Court finds no existing disputed issue of material fact and that Defendants are entitled to judgment as a matter of law.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Defendants on all claims of Plaintiff.

DONE this 10th day of April, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE